## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

**LIFESTYLE LIFT HOLDING,**
**INC.,** a Michigan corporation

                                      **Case No.      2:08-cv-10089**

          Plaintiff/Counter-Defendant,

**v**

**REAL SELF, INC.,** a Washington corporation

          Defendant/Counter-Plaintiff

_____/

| | |
|---|---|
| Kenneth M. Zorn, Esq. (P22756) | Allan S. Rubin (P44420) |
| Michael C. McKinnon, Esq. (P41362) | Neil B. Pioch (P67677) |
| Counsel for Plaintiffs | DRAPER, RUBIN & SHULMAN, PLC |
| 100 Kirts Blvd., Suite A | Co-counsel for Plaintiffs |
| Troy, MI 48084 | 29800 Telegraph Road |
| (248) 519-9129 | Southfield, Michigan 48034 |
| | (248) 358-9400 |

BUTZEL LONG
J. Michael Huget (P39150)
Deborah J. Swedlow (P67844)
Timothy J. Lowe (P68669)
350 S. Main Street, Suite 300
Ann Arbor, Michigan 48104
734-995-3110
Attorneys for Defendant
_____/

## PLAINTIFFS/COUNTER-DEFENDANT/THIRD PARTY DEFENDANTS JOINT MOTION TO DISMISS "COUNTER-CLAIM"

Now comes the Plaintiff/Counter Defendant, Lifestyle Lift Holding, Inc., ("LLH") and

Third Party Defendant, Scientific Image Center Management, Inc. ("SICM") by and through

their attorneys and herby moves this Honorable Court to dismiss Defendant/Counter-Plaintiff's

Counter-Complaint for failure to state a claim upon which relief can be granted pursuant to Fed.

Dockets.Justia.com

R. Civ. Pro. 12(b)(6). The accompanying Brief in Support of this Motion is incorporated hereto by reference as if fully set forth herein.

Pursuant to L.R.7.1, on March 20, 2008, Counsel for Plaintiffs/Counter-Defendants sought concurrence in the relief requested herein from Counsel for Defendants/Counter-Plaintiffs/Third Party Plaintiffs and such concurrence was denied.

WHEREFORE, Plaintiffs/Counter-Defendants respectfully request that this Honorable Court enter and Order dismissing Defendant/Counter-Plaintiffs Counter-Complaint in its entirety.

Respectfully submitted,

Dated: March 21, 2008

s/ Allan S. Rubin
ALLAN S. RUBIN (P44420)
NEIL B. PIOCH (P67677)
DRAPER, RUBIN & SHULMAN, PLC
Attorneys for Plaintiffs
29800 Telegraph Road
Southfield, Michigan 48034
P: (248) 358-9400
F: (248) 358-9729
allan@drsplc.com

**LIFESTYLE LIFT HOLDING,**
**INC.,** a Michigan corporation

                                        **Case No.**     **2:08-cv-10089**

                    Plaintiff/Counter-Defendant,

**v**

**REAL SELF, INC.,** a Washington corporation

                    Defendant/Counter-Plaintiff
_____/

| | |
|---|---|
| Kenneth M. Zorn, Esq. (P22756) | Allan S. Rubin (P44420) |
| Michael C. McKinnon, Esq. (P41362) | Neil B. Pioch (P67677) |
| Counsel for Plaintiffs | DRAPER, RUBIN & SHULMAN, PLC |
| 100 Kirts Blvd., Suite A | Co-counsel for Plaintiffs |
| Troy, MI 48084 | 29800 Telegraph Road |
| (248) 519-9129 | Southfield, Michigan 48034 |
| | (248) 358-9400 |

BUTZEL LONG
J. Michael Huget (P39150)
Deborah J. Swedlow (P67844)
Timothy J. Lowe (P68669)
350 S. Main Street, Suite 300
Ann Arbor, Michigan 48104
734-995-3110
Attorneys for Defendant
_____/

**<u>BRIEF IN SUPPORT OF PLAINTIFFS/COUNTER-DEFENDANT/THIRD PARTY</u>**
**<u>DEFENDANTS JOINT MOTION TO DISMISS "COUNTER-CLAIM"</u>**

# **TABLE OF CONTENTS**

INDEX OF AUTHORITIES......................................................................................... ii

STATEMENT OF QUESTIONS PRESENTED............................................................ iiiv

CONTROLLING AUTHORITY ................................................................................ ix

I.   INTRODUCTION ................................................................................................1

II.  FACTUAL BACKGROUND ...............................................................................1

III. ARGUMENT – Defendants Counter-Claim Should Be Dismissed Pursuant to
     Fed. R. Civ. Pro. 12(B)(6) As It Fails To State A Claim Upon Which Relief
     Can Be Granted......................................................................................................3

     A.  Standard of Review ........................................................................................3

     B.  Counter-Plaintiffs' Counter-Complaint Fails to State a Claim Upon Which
     Relief Can Be Granted and Should Be Dismissed Pursuant to Fed. R. Civ.
     Pro. 12(b)(6)...........................................................................................................5

     1.  Defendant Fails to State a Claim for Breach of Contract Against Plaintiffs ............5

     2.  Defendant Fails to State a Claim for Unfair Competition Under the
     Lanham Act.............................................................................................................6

       a.  The Parties Are Not Alleged to be Competitors ......................................9

       b.  Defendants Have Failed to Allege That the Speech at Issue is
     Commercial in Nature or Identify the Speech Alleged to Be False............................10

     3.  Defendant Fails to State a Claim Under the MCPA ...............................................12

       a.  Defendant's Claims Fail Under the MCPA for the Same Reasons They
     Fail Under the Lanham Act.........................................................................................12

       b.  Plaintiffs are Exempt From the MCPA.................................................................12

       c.  Defendant Has Not Pled That It is a Consumer or a Competitor and
     Therefore Has Failed to State a Claim Under the MCPA............................................13

       d.  Defendant Has Not Pled Its Claim With Particularity as Required by Fed.
     R. Civ. Pro. 9(b).........................................................................................................14

    4.  Defendant Fails to State a Claim Under the Computer Fraud and Abuse
Act ("CFAA") 18 U.S.C. §1030 ....................................................................................15

IV. CONCLUSION ...............................................................................................................20

# INDEX OF AUTHORITIES

*In re AOL, Inc. Version 5.0 Software Litigation*, 168 F. Supp. 2d 1359 (S.D. Fla. 2001) ................................................................................................................16

*Action Automobile Glass v. Automobile Glass Specialists*, 134 F. Supp. 2d 897 (W.D. Mich. 2001)................................................................................................7

*Alfred Dunhill, Ltd. v. Interstate Cigar Co.*, 499 F.2d 232 (1974) ....................................7

*American Council of Cert. Podiatric Physicians v. Amer. Board of Podiatric Surgery*, 185 F.3d 606 (6th Cir. 1999)..........................................................................8

*B&B Microscopes v. Armogida*, 2007 U.S. Dist. LEXIS 70978 (E. D. Pa. 2007) ............18

*Bell Atlantic Corp. v. Twombly*, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007) .....................4

*Carson v. Here's Johnny*, 698 F.2d 831 (6th Cir. 1983)...................................................12

*Central Hudson Gas & Electric Corp. v. Public Service Commission of New York*, 447 U.S. 557, 100 S. Ct. 2343, 65 L. Ed. 2d 341 (1980) ..................................10

*Cline v. Rogers*, 87 F.3d 176 (6th Cir. 1996).........................................................................4

*Coastal Abstract Serv., Inc. v. First America Title Insurance Co.*, 173 F.3d 725 (9th Cir. 1999).............................................................................................................9

*Coffey v. Foamex L.P.*, 2 F.3d 157 (6th Cir. 1993)............................................................14

*Columbia Natural Resource, Inc. v. Tatum*, 58 F.3d 1101 (6th Cir. 1995) ........................4

*Commer. Money Ctr., Inc. v. Ill. Union Insurance Co.*, 508 F.3d 327 (6th Cir. 2007) ...........................................................................................................................4

*Connection Distrib. Co. v. Keisler*, 505 F.3d 545 (6th Cir. 2007)....................................11

*Dastar Corp. v. Twentieth Century Fox Film Corp.*, 539 U.S. 23 (2003).........................7

*In re DeLorean Motor Co.*, 991 F.2d 1236 (6th Cir. 1993)................................................4

*Diamond Power International, Inc. v. Davidson*, 2007 U.S. Dist. LEXIS 73032 (N. D. Ga. 2007) ....................................................................................................18

*Domas v. Rossi*, 52 Mich. App. 311, 217 N.W.2d 75 (1974) .............................................5

*ETW Corp. v. Jireh Publishing, Inc.*, 332 F.3d 915 (6th Cir. 2003) ................................10

*Eastland Partners Ltd. Partners v. Village Green Management Co.*, 342 F.3d 620 (6th Cir. 2003) ................................................................................................5

*Fashion Boutique of Short Hills, Inc. v. Fendi USA, Inc.*, 314 F.3d 48 (2d Cir. 2002) ............................................................................................................9

*Fiber System International v. Roehrs*, 470 F.3d 1150 (5th Cir. 2006) ............................16

*Gertz v. Robert Welch, Inc.*, 418 U.S. 323 (1974) ..........................................................11

*Gillette Co. v. Norelco Consumer Products Co.*, 946 F. Supp. 115 (D. Mass. 1996) ..............................................................................................................8

*Gordon & Breach Science Publrs. S.A. v. American Institute of Physics*, 859 F. Supp. 1521 (S.D.N.Y. 1994) ................................................................................9

*Greenberg v. Life Insurance Co. of Va.*, 177 F.3d 507 (6th Cir. 1999) ............................4

*Groden v. Random House, Inc.*, 61 F.3d 1045 (2d Cir. 1995) ..........................................8

*Hustler Magazine v. Falwell*, 485 U.S. 46 (1988) ..........................................................11

*International Association of Machinists & Aero. Workers v. Werner-Matsuda*, 390 F. Supp. 2d 479 (D. Md. 2005) ............................................................16

*Liss v. Lewiston-Richards, Inc.*, 478 Mich. 203; 732 NW 2d 514 (2007) ......................13

*Lockheed Martin Corp. v. Speed*, 2006 U.S. Dist. LEXIS 53108 (M.D. Fla. 2006) .........17

*Lowes Home Ctrs. v. LL&127, LLC*, 147 Fed. Appx. 516 (6th Cir. 2005).........................5

*Mayer v. Mylod*, 988 F.2d 635 (6th Cir. 1993) ................................................................4

*Mayhall v A H Pond Co, Inc*, 129 Mich. App. 178 (1983)................................................14

*Nexans Wires S.A. v. Sark-USA, Inc.*, 319 F. Supp. 2d 468 (S.D.N.Y. 2004) ..................15

*Partington v. Bugliosi*, 56 F.3d 1147, fn.10 (9th Cir. 1995)............................................12

*Pasquantino v. United States*, 544 U.S. 349, 125 S. Ct. 1766, 161 L. Ed. 2d 619 (2005) ....................................................................................................18

*Pizza Hut, Inc. v. Papa John's International, Inc.*, 227 F.3d 489 (5th Cir. 2000) ..............8

*Porous Media Corp. v. Pall Corp.*, 173 F.3d 1109 (8th Cir. 1999)......................................9

*Proctor & Gamble Co. v. Haugen*, 222 F.3d 1262 (10th Cir. 2000) ..................................9

*Quality Products and Concepts Co. v. Nagel Precision, Inc.*, 469 Mich. 362, 666
    N.W.2d 251 (2003) .............................................................................................5

*Riley v. National Federation of Blind*, 487 U.S. 781 (1988) .............................................11

*SPX Corp. v. Doe*, 253 F. Supp. 2d 974 (N.D. Ohio 2003) ................................................12

*Sandoz Pharm. Corp. v. Richardson-Vicks, Inc.*, 902 F.2d 222 (3d Cir. 1990)..................8

*Scheid v. Fanny Farmer*, 859 F.2d 434 (6th Cir. 1988)........................................................4

*Secureinfo Corp. v. Telos Corp.*, 387 F. Supp. 2d 593 (D. Va. 2005) ..............................17

*Seven-Up Co. v. Coca-Cola Co.*, 86 F.3d 1379 (5th Cir. 1996) .........................................9

*Slobin v Henry Ford Health Care*, 469 Mich. 211 .............................................................13

*Southwest Airlines Co. v. BoardFirst, L.L.C.*, 2007 U.S. Dist. LEXIS 96230 (N.
    D. Tex. 2007) ...................................................................................................18

*Taubman Co. v. Webfeats*, 319 F.3d 770 (6th Cir. 2003) ..................................................11

*Theofel v. Farey-Jones*, 359 F.3d 1066 (9th Cir. 2004)....................................................16

*U-Haul International v. Kresch*, 943 F. Supp. 802 (E.D. Mich. 1996) ..............................9

*United States v. Morris*, 928 F.2d 504 (2nd Cir. 1991) ....................................................19

*United States v. Phillips*, 477 F.3d 215 (5th Cir. 2007)....................................................18

*Virginia State Board of Pharmacy v. Virginia Citizens Consumer Council, Inc.*,
    425 U.S. 748 (1976)........................................................................................10

*Wilcom Pty. Ltd. v. Endless Visions*, 128 F. Supp. 2d 1027 (E.D. Mich. 1998)...............12

*Wynn Oil v. American Way Serv. Corp.*, 943 F.2d 595 (6th Cir. 1991) ...........................12

## STATUTES

15 U.S.C. 1125(a) .................................................................................................................3

18 U.S.C. § 1030 ...............................................................................................3

MCL § 333.16221(d)(i) ...................................................................................13

MCL § 445.903(1) ............................................................................................13

MCL § 445.904(a) ............................................................................................13

## RULES

Fed. R. Civ. Pro. 9(b).......................................................................................14

Fed. R. Civ. Pro. 10(c) ......................................................................................4

Fed. R. Civ. Pro. 12(b)(6) ............................................................................. iiiv

## OTHER AUTHORITIES

4 J. McCarthy Trademarks and Unfair Competition § 27:7, p 27-14 (4th ed. 2002) ..........7

S.Rep.No. 101-544, at 4-5 (1990) ...................................................................16

## STATEMENT OF QUESTION PRESENTED

**WHETHER THE DEFENDANT, IN ITS COUNTER-CLAIM HAS FAILED TO STATE A CLAIM UPON WHICH RELIEF CAN BE GRANTED SUCH THAT DISMISSAL OF ITS COUNTER-CLAIM IS WARRANTED PURSUANT TO FED. R. CIV. PRO. 12(b)(6)?**

Plaintiff/Counter-Defendant answers – Yes.

Defendant/Counter-Plaintiff necessarily answers – No.

# CONTROLLING AUTHORITY

**A.      Standard of Review**

Fed. R. Civ. Pro. 12(b)(6)

*Bell Atlantic Corp. v. Twombly*, 127 S. Ct. 1955, , 167 L. Ed. 2d 929 (2007)

**B.      Count I – Breach of Contract**

*Eastland Partners Ltd. Partners v. Village Green Mgmt. Co.*, 342 F.3d 620, 628 (6th Cir. 2003)

*Quality Products and Concepts Co. v. Nagel Precision, Inc.*, 469 Mich. 362, 375, 666 N.W.2d 251 (2003)

**C.      Count II – Unfair Competition – Lanham Act Claim**

18 U.S.C. § 1125

*Dastar Corp. v. Twentieth Century Fox Film Corp.*, 539 U.S. 23 ( 2003)

*American Council of Cert. Podiatric Physicians v. Amer. Board of Podiatric Surgery,* 185 F.3d 606, 613 (6th Cir. 1999)

*ETW Corp. v. Jireh Publ'g, Inc.*, 332 F.3d 915, 925 (6th Cir. 2003)

*Gordon & Breach Science Publrs. S.A. v. American Inst. of Physics*, 859 F. Supp. 1521 (S.D.N.Y. 1994)

**D.      Count III – Michigan Consumer Protection Act**

MCL §  445.903

MCL § 445.904

*Wynn Oil v. American Way Serv. Corp.*, 943 F.2d 595, 605 (6th Cir. 1991)

*Liss v. Lewiston-Richards, Inc.*, 478 Mich. 203, 210, 213; 732 N.W.2d 514  (2007)

**E.      Count IV – Computer Fraud and Abuse Act**

18 U.S.C. 1030

*Lockheed Martin Corp. v. Speed*, 2006 U.S. Dist. Lexis 53108, (M.D. Fla. 2006)

# I.     INTRODUCTION

Lifestyle Lift Holding, Inc. ("LLH") filed this lawsuit against the Defendant, Real Self, Inc. asserting that the Defendant committed trademark infringement and Unfair Competition under the Lanham Act; Unfair Competition under Michigan Law; and violated the Michigan Consumer Protection Act. ("MCPA") The Defendant denies the material allegations. The Defendant Counter-claims against LLH, and alleged related entities, asserting breach of contract, unfair competition, violations of the MPCA, and the Computer Fraud and Abuse Act. In essence, Defendant asserts that it operates a web site which has a user comment section and that agents of LLH have made postings to its web site, which were supportive of the Lifestyle Lift procedure and which Defendant disagrees with. It is based upon these comments, which Defendant asserts were in violation of the terms and conditions associated with the website. However, because the Defendants Counter-Claim fails to state a claim upon which relief may be granted, Plaintiff moves this Court to dismiss same pursuant to Fed. R. Civ. Pro. 12(b)(6).

# II.     FACTUAL BACKGROUND

LLH holds the trademark, Lifestyle Lift. Docket No. 1, Complaint, ¶ 6; See also, *Id* at Ex. A. (the "Mark"). LLH licenses the Mark for use in cosmetic and plastic surgery centers across the United States. *Id*, at ¶ 7. The Defendant, Real Self, operates a website www.realself.com. Docket No. 7¸ Counter-Complaint, ¶ 7. Real Self holds itself to be a website which allows consumers to discuss anti-aging solutions and personal beauty services, *Id*. LLH alleges that Real Self is a "for profit" business which sells advertising, including advertising to surgeons who compete with LLH and centers authorized to use the Mark, *See*, Docket 1, Complaint, ¶ 11, and that in marketing its website, Real Self has improperly included the Mark in its metadata, which is used by Real Self to drive web traffic to its site and causes persons using search engines such as

Google and Yahoo, to be directed to Defendants website when they search for "Lifestyle Lift," *Id* at ¶ 15. Once on Defendant's website, Defendant has placed internal site links titled "Lifestyle Lift," "Atlanta Lifestyle Lift," "Dallas Lifestyle Lift," "Michigan Lifestyle Lift," "Texas Lifestyle Lift," and "New York Lifestyle Lift. *Id*, at ¶ 13. When a visitor clicks on these internal site links, one is not directed to doctors or medical centers licensed to use the Mark, but rather to LLH competitors. *Id*, at 14. LLH alleges that this is likely to cause confusion and to deceive the public into believing that these competitors are affiliated with LLH.

On March 3, 2008, the Defendant filed a Counter-Claim as to LLH and new parties, SICM and various John Doe Defendants (collectively referred to herein as "Plaintiffs"). In its Counter-Claim, the Defendant asserts that its website has terms and conditions connected with its use. Docket No. 7, Counter-Claim, ¶'s 10-13. The Defendant asserts, "upon information and belief," that LLH and SICM, along with their employees or agents posed as consumers and posted comments on the site regarding the Lifestyle Lift. *Id*, at ¶ 14. Without identifying the user, nor the substance of the alleged post, Defendant asserts that the statements are "false, misleading, and violate the terms of use. *Id*, at 15-19.

In Count I, Defendant alleges that Plaintiff entered into a contract with the Defendant for the use of the website when the *unidentified* "agents or employee" signed up as users and then breached this purported contract when they posted comments regarding the Lifestyle Lift, *Id*, at ¶ 23-24, which were "false or misleading." *Id*, at ¶ 25. According to Defendant, this breach caused it damages in excess of $75,000.00. *Id*. At ¶ 26.[1]

---

[1] Assuming that the terms of use represent a valid contract, the Defendant has omitted the following language contained in § 2 of the Terms and Conditions: "If you breach this Agreement and use the Service for advertising, promotion, or other commercial or non-personal uses (including any of the prohibited examples above), you acknowledge that you will have caused substantial harm to RealSelf, but that the amount of such harm would be very difficult to

Count II alleges a claim for unfair competition under the Lanham Act and asserts that the postings by LLH's purported agents constitute "false advertising and unfair competition under the Lanham Act" [15 U.S.C. 1125(a)], as Plaintiffs have allegedly used the website to "falsely promote and misrepresent the Lifestyle Lift. *Id* at ¶'s 29-30.

Count III alleges that Plaintiffs violated the MCPA by engaging in unfair competition as defined under and have used "deceptive representations" in promoting the Lifestyle Lift. *Id*, at ¶'s 37-38. While Defendant alleges it has suffered harm, the nature of that harm is not specified. *Id*, at ¶ 39.

Count IV asserts a claim for a purported violations of the Computer Fraud and Abuse Act, 18 U.S.C. § 1030. ("CFAA") According to Defendant, it operates a web site which permits consumers to post comments about various matters, including the Lifestyle Lift. Defendant alleges that by posting "positive comments" about the Lifestyle Lift, Plaintiffs' agents "knowingly accessed the website with the intention of defrauding" Defendant and its users, *Id*, at ¶ 45, and "exceeded its authorized access by violating the terms of use. *Id*, at ¶ 46. Despite contractual language limiting damages for violations of the terms of use to $100.00 per violation, Defendants assert that Defendant have suffered a "loss" in excess of $5,000.00.

### III.   ARGUMENT

**DEFENDANT'S COUNTER-CLAIM SHOULD BE DISMISSED PURSUANT TO FED. R. CIV. PRO 12 (B)(6) AS IT FAILS TO STATE A CLAIM UPON WHICH RELIEF CAN BE GRANTED**

### A.    Standard of Review

---

determine. As a reasonable estimation of such harm, you agree to pay RealSelf $100 for each such prohibited review, question, answer or other content you post or submit on or through the Service." Defendant has not alleged the number of "false or misleading" posting it claims Plaintiffs' agents made, nor has its alleged that the number of postings exceeds 750.

Fed. R. Civ. Pro. 12(b)(6) allows a Court to dismiss a matter for "failure to state a claim upon which relief can be granted." "The purpose of Rule 12(b)(6) is to allow a defendant to test whether, as a matter of law, the plaintiff is entitled to legal relief even if everything alleged in the complaint is true." *Mayer v. Mylod*, 988 F.2d 635, 638 (6th Cir. 1993). When deciding a motion under R. 12(b)(6), "[t]he court must construe the complaint in the light most favorable to the plaintiff, accept all factual allegations as true, and determine whether the plaintiff undoubtedly can prove no set of facts in support of his claims that would entitle him to relief." *Cline v. Rogers*, 87 F.3d 176, 179 (6th Cir. 1996). "[A] plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atlantic Corp. v. Twombly*, 127 S. Ct. 1955, 1965, 167 L. Ed. 2d 929 (2007) (citations omitted); see also *Columbia Natural Res., Inc. v. Tatum,* 58 F.3d 1101, 1109 (6th Cir. 1995) ("[W]hile liberal, this standard of review does require more than the bare assertion of legal conclusions."). "Factual allegations must be enough to raise a right to relief above the speculative level . . . on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Twombly*, 127 S. Ct. at 1965, (Citations omitted). "In practice, 'a . . . complaint must contain either direct or inferential allegations respecting all the material elements to sustain a recovery under some viable legal theory.'" *In re DeLorean Motor Co.*, 991 F.2d 1236, 1240 (6th Cir. 1993) (quoting *Scheid v. Fanny Farmer*, 859 F.2d 434, 436 (6th Cir. 1988)). In considering whether to grant a Motion to dismiss, documents attached to the pleadings may be considered. *Commer. Money Ctr., Inc. v. Ill. Union Ins. Co.*, 508 F.3d 327, 335-336 (6th Cir. 2007); *see also*, Fed. R. Civ. Pro. 10(c). Furthermore, the Court may to consider documents referenced by the pleadings themselves that are central to the plaintiff's claim. See, e.g., *Greenberg v. Life Ins. Co. of Va.,* 177 F.3d 507, 514 (6th Cir. 1999).

**B.      Counter-Plaintiffs' Counter- Complaint Fails to State a Claim Upon Which Relief Can Be Granted and Should Be Dismissed Pursuant to Fed. R. Civ. Pro. 12(b)(6)**

**1.      Defendant Fails to State a Claim for Breach of Contract Against Plaintiffs.**

Under Michigan law, to recover on a breach of contract theory, a plaintiff must prove (1) that a contract existed between the parties; (2) the terms of the contract; (3) that defendants breached the contract; and (4) that the breach caused plaintiff injury. *Eastland Partners Ltd. Partners v. Village Green Mgmt. Co.*, 342 F.3d 620, 628 (6th Cir. 2003). A court's obligation in interpreting a contract is to discern the contracting parties' intent. *Quality Products and Concepts Co. v. Nagel Precision, Inc.*, 469 Mich. 362, 375, 666 N.W.2d 251 (2003). If the contract language is clear and unambiguous, the contract is construed as a matter of law and enforced as written unless contrary to public policy. *Quality Products*, 469 Mich. at 375, Under Michigan law, mutuality of obligation is an essential element of a valid contract. *Lowes Home Ctrs. v. LL&127, LLC*, 147 Fed. Appx. 516, 523 (6th Cir. 2005). Hence both parties to an agreement must be bound by the contract, or neither is bound. *Lowes*, supra, citing, *Domas v. Rossi*, 52 Mich. App. 311, 217 N.W.2d 75, 77 (1974).

In this case, the Defendant has failed to allege sufficient facts to establish that a contract was entered into between Plaintiffs and the Defendant. In fact, the Defendant has failed to establish any contractual relationship between itself and any Plaintiff. Taking Defendant's Counter-Complaint in the light most favorable to it, the Defendant has pled as follows:

- Defendant operates a website known as www.realself.com, which contains terms of use. See, Counter-Complaint, ¶ 10.
- In order to sign up for an account, a user must explicitly accept the terms of use. *Id*, at ¶ 12. The terms and conditions provide that "This is a contract between you and RealSelf, Inc." See, Docket 7-3, Counter-Complaint, Ex. A, ¶ 1.
- Some unknown person(s) have signed up as users on Defendant's website, using pseudonyms and allegedly pretending to be Lifestyle Lift Customers and have posted on

Defendants website positive comments about the Lifestyle Lift procedure and related procedures, which Defendant asserts are false and misleading. *Id*, at 14-19. [2]

- The unknown users are employees of various John Doe Corporations, whom Defendant asserts are related to LLH and SICM. *Id*, at ¶ 4.

In essence, Defendant asserts that it operates a website with terms and conditions for use and that person(s) associated with Plaintiffs visited the site, signed up as users, and made posts to the site. However, as set forth in the terms and conditions for use of the site, the contract is between the User and Defendant and no language binds third parties, such as LLH or SICM to the terms and conditions. Therefore, Defendant's Counter-Complaint fails to allege that Plaintiffs, as opposed to some third party user, 1) entered into a contract on behalf Plaintiffs, 2) had knowledge of the alleged terms and agreed to be bound by them, or 3) that their was a mutuality of obligation created Plaintiffs and Defendant, such that in the event of a breach by Defendant, the Plaintiffs could enforce the contract. In other words, while Defendants has alleged that certain employees of companies related to Plaintiffs signed up for user accounts with Defendant and agreed the terms, and that these users, breached the terms of use by positing positive comments about the Lifestyle Lift on the website, the Defendant has not pled that they entered into a contract with Plaintiffs, which Plaintiffs breached. In fact, the terms themselves belie any such interpretation as it expressly states that the contract is between the "user" and Defendant. See, Docket 7-3, Counter-Complaint, Ex. A, ¶ 1. Hence, Defendant's breach of contract claims should be dismissed for failure to allege the existence of a valid and enforceable agreement between Plaintiffs and Defendant, which Plaintiffs breached.

### 2. Defendant Fails to State a Claim for Unfair Competition Under the Lanham Act

---

[2] It must be noted that the web site requires users to create a username to protect the users privacy. (See, Ex. A, Real Self Account Sign-Up page) Therefore, most and perhaps all, user names are "pseudonyms."

Defendant asserts that Plaintiffs have violated 15 U.S.C. 1125(a) by "…false advertising and unfair competition in violation of Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a)" [Counter-Complaint, ¶ 29] by using "www.realself.com to falsely promote and misrepresent the Lifestyle Lift." [Counter-Complaint, ¶30]. According to the Counter-Complaint, Plaintiffs have engaged in unfair competition by posting "numerous comments on the website purporting to be consumers of the procedure and other procedures performed by Lifestyle Lift facilities [Counter-Complaint, ¶ 14] which Defendant alleges are "fabricated, false, misleading and in violation of the Terms of Use." [Counter-Complaint, ¶ 15].

15 U.S.C. 1125 (a)(1) provides:

(a) Civil action.

(1) Any person who, on or in connection with any goods or services, or any container for goods, uses in commerce any word, term, name, symbol, or device, or any combination thereof, or any false designation of origin, false or misleading description of fact, or false or misleading representation of fact, which—
…

(B) in commercial advertising or promotion, misrepresents the nature, characteristics, qualities, or geographic origin of his or her or another person's goods, services, or commercial activities, shall be liable in a civil action by any person who believes that he or she is or is likely to be damaged by such act.

The Lanham Act was intended to make "actionable the deceptive and misleading use of marks," and "to protect persons engaged in . . . commerce against unfair competition." *Dastar Corp. v. Twentieth Century Fox Film Corp.*, 539 U.S. 23, 28 (2003) The Lanham act "does not have boundless application as a remedy for unfair trade practices." *Id* at 29, citing, *Alfred Dunhill, Ltd. v. Interstate Cigar Co*., 499 F.2d 232, 237 (1974). "Because of its inherently limited wording, § 43(a) can never be a federal 'codification' of the overall law of 'unfair competition,'" *Id*, citing, 4 J. McCarthy Trademarks and Unfair Competition § 27:7, p 27-14 (4th ed. 2002), but can apply only to certain unfair trade practices prohibited by its text. *Id*.

15 U.S.C. § 1125 forbids the use of false or misleading advertising. To state a claim for false advertising under the act, a party must allege that: (1) defendant made false or misleading statements of fact concerning his own product or that of another; (2) the statement actually, or tends to, deceive a substantial portion of its intended audience; (3) the statement is material, in that it will likely influence the consumer's decisions; (4) the statement was introduced into interstate commerce; and (5) there is some causal link between the statements and plaintiff's harm. See, *American Council of Cert. Podiatric Physicians v. Amer. Board of Podiatric Surgery,* 185 F.3d 606, 613 (6th Cir. 1999).

A "false or misleading" statement can be either literally false, or it can be literally true yet misleading or confusing. *Id*, at 614. Literally false statements violate the Act; Plaintiff need only establish literal falsity to obtain relief, as actual consumer deception is presumed. *Id*. Where statements are literally true, yet deceptive, or too ambiguous to support a finding of literal falsity, a violation can only be established by proof of actual deception (i.e., evidence that individual consumers perceived the advertisement in a way that misled them about the plaintiff's product). *Id.* A plaintiff relying upon statements that are literally true yet misleading "cannot obtain relief by arguing how consumers could react; it must show how consumers actually do react." *Id,* citing, *Sandoz Pharm. Corp. v. Richardson-Vicks, Inc*., 902 F.2d 222, 229 (3d Cir. 1990). In addition, a Lanham Act claim must be based upon a statement of fact, not of opinion. *Id*, citing, *Groden v. Random House, Inc.*, 61 F.3d 1045, 1052 (2d Cir. 1995); *Gillette Co. v. Norelco Consumer Prods. Co.*, 946 F. Supp. 115, 136 (D. Mass. 1996). Hence, puffery, exaggerated blustering or subjective boasting upon which no reasonable consumer would rely cannot form

the basis for the assertion of a false advertising claim under the Lanham Act. *Pizza Hut, Inc. v. Papa John's Int'l, Inc.,* 227 F.3d 489, 496-97 (5th Cir. 2000).[3]

While the Lanham Act does not define the phrase "commercial advertising or promotion," most courts have adopted the four-part test set forth in *Gordon & Breach Science Publrs. S.A. v. American Inst. of Physics*, 859 F. Supp. 1521 (S.D.N.Y. 1994); *See*, e,g., *Fashion Boutique of Short Hills, Inc. v. Fendi USA, Inc*., 314 F.3d 48, 56 (2d Cir. 2002). Under the test, in order to qualify as "commercial advertising or promotion," the contested representations must be "(1) commercial speech; (2) by a defendant who is in commercial competition with plaintiff; (3) for the purpose of influencing consumers to buy defendant's goods or services"; and, (4) although representations less formal than those made as part of a classic advertising campaign may suffice, they must be disseminated sufficiently to the relevant purchasing public. *Fashion Boutique*, supra, citing, *Gordon & Breach I*, 859 F. Supp. at 1535-36.[4] As the *Gordon* court stated, "only commercial speech that a competitor employs for the express purpose of influencing consumers to buy the competitor's goods or services is actionable under section [1125]." *U-Haul Int'l v. Kresch*, 943 F. Supp. 802, 811 (E.D. Mich. 1996), citing, *Gordon*, 859 F. Supp. at 1533. A careful reading of Defendants claims under the Lanham Act demonstrate that it fails to allege required elements for a false advertising claim under the act.

### a.     The Parties Are Not Alleged to be Competitors.

---

[3] Because Defendant does not identify the allegedly false statements it asserts to have been made, it is impossible to know whether Defendant asserts that the alleged advertising was literally false, or whether it is alleged to be misleading.

[4] See also *Proctor & Gamble Co. v. Haugen,* 222 F.3d 1262, 1273-74 (10th Cir. 2000) (adopting four-part test); *Coastal Abstract Serv., Inc. v. First Am. Title Ins. Co.*, 173 F.3d 725, 735 (9th Cir. 1999) (same); *Seven-Up Co. v. Coca-Cola Co.*, 86 F.3d 1379, 1384 (5th Cir. 1996) (same); *Porous Media Corp. v. Pall Corp*., 173 F.3d 1109, 1121 (8th Cir. 1999) (although defining advertising as communication that "proposes a commercial transaction," analyzing whether dissemination was sufficient to satisfy fourth element of *Gordon & Breach* test).

In order to bring a false advertising claim under § 1125(a), the claim must be asserted "by a defendant who is in commercial competition with plaintiff." *U-Haul Int'l*, supra. Here, Defendant does not assert that it is a competitor of Plaintiffs - who it asserts is a licensors of a cosmetic surgery procedure known as the Lifestyle Lift [Counter-Complaint ¶ 8] of SICM and the John Doe Corporations, who are alleged to be related entities engaged in the staffing business or which are otherwise related to the surgical procedures provided by LLH [Counter-Complaint, ¶ 4, 9]. Rather, the Defendant asserts that it is the operator of a website "which allows consumers of anti-aging solutions and personal beauty services to engage in an internet-based community discussion." [Counter-Complaint, ¶ 7]. In other words, the Defendant has not set forth any allegations that the Plaintiffs and Defendant are competitors, therefore, Defendant's claims fail to allege a necessary element of a false advertising claim and should be dismissed.[5]

      **b.**    **Defendant Has Failed to Allege That the Speech at Issue is Commercial in Nature or Identify the Speech Alleged to be False.**

Defendant's claim is also deficient as it fails to allege that the speech is commercial speech. "Commercial speech is 'speech which does no more than propose a commercial transaction . . . .'" *ETW Corp. v. Jireh Publ'g, Inc.*, 332 F.3d 915, 925 (6th Cir. 2003), quoting *Virginia State Bd. of Pharmacy v. Virginia Citizens Consumer Council, Inc.*, 425 U.S. 748, 762 (1976)). That said, commercial speech is entitled to First Amendment protection, *ETW Corp.*, 332 F.3d at 925 (collecting cases), but commercial speech that does not accurately inform the public or that is misleading is not entitled to constitutional protection. *Central Hudson Gas & Elec. Corp. v. Public Service Commission of New York*, 447 U.S. 557, 563-64, 100 S. Ct. 2343, 65 L. Ed. 2d

---

[5] While not addressed in this Brief, it is difficult to see how Defendant's website, which is intended to permit the discussion of cosmetic medical procedures, would be harmed by such discussions.

341 (1980).[6] However, as pled in Defendant's Counter-Claim, the unidentified speech at issue cannot be said to be "commercial," as by Defendant's own admission, it does more than simply propose a commercial transaction.[7] Rather, according to ¶ 18 of Defendant's Counter-Complaint, the comments "praise, recommend, and describe positive experience with the Lifestyle Lift Procedure … .". Furthermore, Defendant does not allege that the speech took place in the course of a advertising campaign, but rather, on website hosted by Defendant, which provides a forum for consumers to discuss anti-aging and beauty products [Counter-Complaint, ¶ 7], on which Defendant asserts that certain users on the site, whom they believe are somehow affiliated with Plaintiffs, have posted positive comments about the procedure, using pseudonyms and pretending to be Lifestyle Lift patients.[8] [9] [See, Counter-Complaint, ¶'s14-19]. Of course, pure

---

[6] The Lanham Act is constitutional because it only regulates commercial speech, which is entitled to reduced protections under the First Amendment. *Taubman Co. v. Webfeats*, 319 F.3d 770, 774 (6th Cir. 2003), citing, *Central Hudson*, 447 U.S. at 563. Hence, "any expression embodying the use of a mark not "in connection with the sale . . . or advertising of any goods or services," and not likely to cause confusion, is outside the jurisdiction of the Lanham Act and necessarily protected by the First Amendment." *Id*.

[7] Even a careful reading of Defendants pleadings leaves one to guess at the speech at issue. *See,* e.g. *Twombly*, 127 S. Ct. at 1965. [Factual allegations must be enough to raise a right to relief above the speculative level….]

[8] The First Amendment protects the right to speak anonymously.*Connection Distrib. Co. v. Keisler*, 505 F.3d 545, 560 (6th Cir. 2007)

[9] The Supreme Court, albeit in the defamation context, has recognized that at the heart of the First Amendment is the recognition of the fundamental importance of the free flow of ideas and opinions on matters of public interest and concern. "The  freedom to speak one's mind is not only an aspect of individual liberty -- and thus a good unto itself -- but also is essential to the common quest for truth and the vitality of society as a whole." *Hustler Magazine v. Falwell*, 485 U.S. 46, 50-51 (1988). The First Amendment recognizes no such thing as a "false" idea. *Id, Gertz v. Robert Welch, Inc.*, 418 U. S. 323, 339 (1974). But even though falsehoods have little value in and of themselves, they are "nevertheless inevitable in free debate," *id.*, at 340, and a rule that would impose strict liability on a publisher for false factual assertions would have an undoubted "chilling" effect on speech relating to public figures that does have constitutional value. "Freedoms of expression require" breathing space.'" *Hustler*, 485 U.S., at 52. When commercial speech is inexorably intertwined with non-commercial speech, the Supreme Court has determined the speech to be fully protected by the First Amendment. *See, Riley v. Nat'l Fed'n of Blind*, 487 U.S. 781, 796 (1988).

opinions, i.e. "those that do not imply facts capable of being proved true or false" -- are protected by the First Amendment. See, *Partington v. Bugliosi*, 56 F.3d 1147, 1153 fn.10 (9th Cir. 1995). Moreover, "statements published through Internet discussion groups are less likely to be viewed as factual assertions." *SPX Corp. v. Doe*, 253 F. Supp. 2d 974, 983 (N.D. Ohio 2003).

In this case, the Defendant has not pled what statement(s) are allegedly false, nor has it alleged that such statements were made in the context of commercial speech. Rather, all Defendant has asserted is that some unknown person, who is allegedly connected with Plaintiffs, have posted comments on the Defendants website regarding the Lifestyle Lift, which contradict other statements made on the site and which Defendant asserts to be false. However, nothing in Defendant's claim can be fairly read to allege that the speech at issue is anything other than a debate amongst ideas, or that it proposes a commercial transaction between a consumer and Plaintiffs is not mere puffery or an expression of opinion. Hence, Defendant has failed to establish that the speech at issue is commercial speech and therefore, Defendants claim for unfair competition should be dismissed.

### 3. Defendant Fails to State a Claim under the MCPA.

#### a. Defendant's Claims Fail Under the MCPA for the Same Reasons They Fail Under the Lanham Act.

The Sixth Circuit has noted that the Lanham Act and Michigan unfair competition claims are both governed by the same standards. *Carson v. Here's Johnny*, 698 F.2d 831, 833 (6th Cir. 1983); *see also, Wynn Oil v. American Way Serv. Corp.*, 943 F.2d 595, 605 (6th Cir. 1991); *Wilcom Pty. Ltd. v. Endless Visions*, 128 F. Supp. 2d 1027, 1033 (E.D. Mich. 1998). Hence, for the same reasons that Defendant fails to state a claim under the Lanham Act, Defendant fails to state a claim under the MCPA. Therefore, this claim should be dismissed.

#### b. Plaintiffs are Exempt From the MCPA.

Defendant's allegations involve the advertising of medical procedures performed under the Lifestyle Lift trade name. As noted by Defendant, LLH licenses the Mark for use in *cosmetic and plastic surgery centers* across the United States. Counter-Complaint, at ¶ 7. These medical procedures are performed by licensed physicians. While the MCPA prohibits "[u]nfair, unconscionable, or deceptive methods, acts, or practices in the conduct of trade or commerce are unlawful . . .," MCL § 445.903(1), it also contains an exemption in MCL § 445.904(a) that exempts any "transaction or conduct specifically authorized under laws administered by a regulatory board or officer acting under statutory authority of this state or the United States." [10] The Michigan Supreme Court has explained that the exemption applies when the "*general transaction* is specifically authorized by law, regardless of whether the specific misconduct alleged is prohibited." *Liss v. Lewiston-Richards, Inc.*, 478 Mich. 203, 210, 213; 732 N.W.2d 514 (2007)[Emphasis added]. In this case, the general transaction at issue relates to the practice of medicine - a state regulated activity. Hence, Defendants claim falls into the exemption set forth in MCL § 445.904(a) and therefore Defendant's claim under the MCPA should be dismissed.

### c. Defendant Has not Pled That It is a Consumer or a Competitor and Therefore Has Failed to State a Claim Under the MCPA.

Defendant's lack standing to pursue a claim under the MCPA as it does not allege that is a consumer who has been harmed by alleged deceptive trade practices of the Plaintiffs. As the Michigan Courts have recognized, the MCPA protects Michigan's consumers by prohibiting various methods, acts, and practices in trades or commerce. *Slobin v Henry Ford Health Care*, 469 Mich. 211, 215; 666 N.W.2d 632 (2003). The MCPA applies only to purchases by

---

[10] The practice of medicine is governed by the Michigan Public Health Code, which is administered by the Michigan Department of Community Health. The Public Health Code prohibits false or misleading advertising. *See*, MCL § 333.16221(d)(i).

consumers and does not apply to purchases that are primarily for business purposes. *Slobin,* 469 Mich. at 216. In certain circumstances, the MCPA has also been held to permit a suit to by a competitor for example, where a defendant is alleged to have made false statements about a competitor's product or business practices. *See,* e,g,, *Action Auto Glass v. Auto Glass Specialists,* 134 F. Supp 2d. 897, 901, 903 (W.D. Mich. 2001). In this case, Defendant has pled it operates a website where it claims that Plaintiffs have caused others to post alleged inaccurate information on its discussion board. What the Defendant has not alleged is that it is a consumer or a competitor who has been harmed by the alleged actions of Plaintiffs; therefore, Defendant's claim under the MCPA should be dismissed as Defendant lacks standing to assert this claim.

### d. Defendant Has Not Pled Its Claim with Particularity as Required by Fed. R. Civ. Pro. 9(b)

Defendant has failed to plead fraud with the particularity required by Fed. R. Civ. Pro. 9(b). In *Mayhall v A H Pond Co, Inc,* 129 Mich App 178, 182-183 (1983) the Court held that "[t]he great majority of the specific prohibited practices enumerated in the [MCPA] . . . involve fraud." *Mayhall* at 182, *citing* MCL 445.903(1)(a)-(cc). Here, Defendant asserts that Plaintiffs' agents posted comments posted fabricated, false, misleading information on its website. Counter-Complaint, at ¶ 15 and have used deceptive representations in its posting. *See*, *Id*, at ¶ 38. In other words, Defendant has asserted Plaintiffs have committed fraud via advertising. The Sixth Circuit "reads [Rule 9(b)] liberally, … requiring a plaintiff, at a minimum, to 'allege the time, place, and content of the alleged misrepresentation on which he or she relied; the fraudulent scheme; the fraudulent intent of the defendants; and the injury resulting from the fraud.'" *Coffey v. Foamex L.P.*, 2 F.3d 157, 161-62 (6th Cir. 1993) (citation omitted). Rule 9(b) also requires the plaintiff to allege at least some details regarding how he relied on the representations. *Id*. at 162. In this case, Defendant has not pled the time, place, and content of the alleged misrepresentation

nor its reliance on same. Thus Defendant has failed to state with the particularity required by

Fed. R. Civ. Pro. 9(b) for a claim under the MCPA.

> **4. Defendant Fails to State a Claim Under the Computer Fraud and Abuse Act ("CFAA")18 U.S.C.§ 1030**

Defendant has asserted a claim against Plaintiffs under the CFAA, 18 U.S.C. 1030. 18

U.S.C.1030(g) provides:

> (g) Any person who suffers damage or loss by reason of a violation of this section may maintain a civil action against the violator to obtain compensatory damages and injunctive relief or other equitable relief. A civil action for a violation of this section may be brought only if the conduct involves 1 of the factors set forth in clause (i), (ii), (iii), (iv), or (v) of subsection (a)(5)(B). Damages for a violation involving only conduct described in subsection (a)(5)(B)(i) are limited to economic damages. …

The CFAA is a criminal statute that allows prosecution of civil actions if certain prerequisites

are satisfied. *Nexans Wires S.A. v. Sark-USA, Inc.,* 319 F.Supp.2d 468, 471-72 (S.D.N.Y. 2004).

In order to file a civil action, the Defendant must allege a violation of § (a)(5)(B) which provides

a civil remedy against whoever:

> (B) by conduct described in clause (i), (ii), or (iii) of subparagraph (A), caused (or, in the case of an attempted offense, would, if completed, have caused)-
>
> (i) loss to 1 or more persons during any 1-year period (and, for purposes of an investigation, prosecution, or other proceeding brought by the United States only, loss resulting from a related course of conduct affecting 1 or more other protected computers) aggregating at least $ 5,000 in value;
> … .

While Defendant has asserted a loss in excess of $5,000.00 [Counter-Complaint, ¶ 48], no

other allegation of a violation of § (a)(5)(B) are described by Defendant, such that it appears that

Defendant is proceeding under § (a)(5)B(i).[11] [12] In particular, the Defendant alleges that

---

[11] By its plain language, §(a)(5)(B)(i), also requires a violation of clause (i), (ii), or (iii) of subparagraph § (a)(5)(B)(1) which provides three basis for proceeding under subparagraph A. In this instance, they would require the Defendant to allege that Plaintiffs intentionally accessed a protected computer without authorization, and as a result of such conduct, intentionally or

Plaintiffs knowingly accessed www.realself.com with the intention of defrauding Defendant and the users of www.realself.com[13] and in doing so, exceed its authorized access by violating the terms of use posted on the website causing Defendant to suffer a loss suffering loss in excess of $5,000. [See, Counter-Complaint, ¶'s 45-48.]

In pertinent part, 18 U.S.C. 1030(a)(4) provides:

Whoever, … knowingly and with intent to defraud, accesses a protected computer without authorization, or exceeds authorized access, and by means of such conduct furthers the intended fraud and obtains anything of value, unless the object of the fraud and the thing obtained consists only of the use of the computer and the value of such use is not more than $5,000 in any 1-year period;

Federal Courts have explained that the phrase "without authorization" in the CFAA "contemplate[s] a situation where an outsider, or someone without authorization, accesses a computer" and that a civil cause of action was created under the CFAA to redress damage and loss as a result of serious computer abuse, such as transmission of computer "viruses" and "worms". *Int'l Ass'n of Machinists & Aero. Workers v. Werner-Matsuda*, 390 F. Supp. 2d 479, 495-496 (D. Md. 2005); *In re AOL, Inc. Version 5.0 Software Litig.*, 168 F. Supp. 2d 1359, 1370 (S.D. Fla. 2001); *see also*, S.Rep.No. 101-544, at 4-5 (1990). The term "'exceeds authorized

---

recklessly caused an impairment to the integrity or availability of data, a program, a system, or information and Defendant's loss to one or more persons during any 1-year period (and, for purposes of an investigation, prosecution, or other proceeding brought by the United States only, loss resulting from a related course of conduct affecting 1 or more other protected computers) aggregating at least $5,000 in value. Despite the plain language of the Act, Courts which have considered the Act have held that a civil action may be maintained under § 1030(a)(4) of the CFAA if the violative conduct involves any one of these factors set forth in subsection (a)(5)(B). See, e.g, *Fiber Sys. Int'l v. Roehrs*, 470 F.3d 1150, 1157 (5th Cir. 2006); *Theofel v. Farey-Jones*, 359 F.3d 1066, 1078 n.5 (9th Cir. 2004). The Sixth Circuit has not spoken on this issue. Plaintiffs do not concede this issue, however, do not believe it needs to be resolved to reach the merits of this Motion.

[12] The CFAA provides specific definitions for the terms "loss" and damage. 18 U.S.C.(e)(8)(11).

[13] Defendant alleges that Plaintiffs "knowingly and with intent to defraud accessed the computers. However, Defendant has not pled the fraud with particularity required by R. 9(b) and its claims should be dismissed.

access' means to access a computer with authorization and to use such access to obtain or alter information in the computer that the accesser is not entitled so to obtain or alter." 18 U.S.C.1030(e)(6). In order to state a claim under § 1030(a)(4), a party must satisfy four elements: that the defendant (1) has accessed a "protected computer" (2) without authorization or by exceeding such authorization as was granted, (3) "knowingly" and with "intent to defraud," and (4) as a result has "further[ed] the intended fraud and obtain[ed] anything of value." *P.C. Yonkers,* 428 F.3d at 508.

In *Secureinfo Corp. v. Telos Corp.*, 387 F. Supp. 2d 593, 601 (D. Va. 2005), the Plaintiff licensed software to a third party that was stored in a server and Plaintiff accessed the server and downloaded information about the program and thereafter, contrary to the licensing agreement, showed such materials to third parties. In granting the defendants Motion to Dismiss, the *Secureinfo* Court stated:

> In essence, the plaintiff is asking the Court to hold that every breach of a computer software license agreement allows the licensing party to recover damages against a non party to the software license under the CFAA, even though it cites no cases that so hold. The Court declines to read the statute as broadly as suggested by the plaintiff. Consequently, the Court grants Defendants' motion to dismiss the CFAA claims because Plaintiff fails to allege that Defendants accessed BAI's server without authorization or in excess of authority. S*ecureinfo Corp.*, 387 F. Supp. 2d at 610.

In *Lockheed Martin Corp. v. Speed*, 2006 U.S. Dist. Lexis 53108, (M.D. Fla. 2006) (Ex. B) the Court extensively discussed the meaning of "without authorization" and "exceeding authorized access" in the context of a claim under §(a)(4). In *Lockheed*, three former employees, while employed by the plaintiff accessed its computer system and downloaded confidential information which they later took to a competitor. In granting dismissal of the plaintiffs complaint, the *Lockheed* Court stated:

> The term, "without authorization," is not defined by the CFAA. Nonetheless, authorization" is commonly understood as "[t]he act of conferring authority; permission." The American

Heritage Dictionary, 89 (1976). On the other hand, the CFAA defines "exceeds authorized access" as follows: "to access a computer with authorization and to use such access to obtain or alter information in the computer that the accesser is not entitled so to obtain or alter[.]" 18 U.S.C. § 1030(e)(6). The CFAA targets access "without authorization" in six separate offenses (§§ 1030(a)(1), (a)(2), (a)(3), (a)(4), (a)(5)(A)(ii), (a)(5)(A)(iii)), only three of which also reach persons "exceeding authorized access" (§§ 1030(a)(1), (a)(2), (a)(4)). Thus, it is plain from the outset that Congress singled out two groups of accessers, those "without authorization" (or those below authorization, meaning those having no permission to access whatsoever - typically outsiders, as well as insiders that are not permitted any computer access) and those exceeding authorization (or those above authorization, meaning those that go beyond the permitted access granted to them - typically insiders exceeding whatever access is permitted to them).

By applying the plain meaning of the statutory terms to the facts of this case, it is clear that the Employees accessed with authorization, did not exceed their authorization, and thus did not violate § 1030(a)(4). The analysis is not a difficult one. ***Because Lockheed permitted the Employees to access the company computer, they were not without authorization. Further, because Lockheed permitted the Employees to access the precise information at issue, the Employees did not exceed authorized access. The Employees fit within the very group that Congress chose not to reach, i.e., those with access authorization. It follows that § 1030(a)(4) cannot reach them***. (Emphasis added)[14]

Recently, in *Southwest Airlines Co. v. BoardFirst, L.L.C.*, 2007 U.S. Dist. Lexis 96230 (N. D. Tex. 2007) (Ex. C.), the Court discussed, without deciding, the meaning of the terms "without authorization" and "exceeds authorized access" under the CFAA. [15] Citing to *United States v. Phillips*, 477 F.3d 215 (5th Cir. 2007), the *Southwest* Court stated:

The *Phillips* Court noted that certain provisions of the CFAA make distinctions between unauthorized users and those who "exceed authorized access." *Id.* at 219. Relying on the legislative history of the CFAA, the Court stated that "[i]n conditioning the nature of the

---

[14] *Lockheed* has been widely followed. *See*, *B&B Microscopes v. Armogida*, 2007 U.S. Dist. Lexis 70978 (E. D. Pa. 2007) (Ex. D.); *Diamond Power Int'l, Inc. v. Davidson,* 2007 U.S. Dist Lexis 73032, 48-49 (N. D. Ga. 2007) (Ex. E) ["Under the more reasoned view, a violation for accessing "without authorization" occurs only where initial access is not permitted. And a violation for "exceeding authorized access" occurs where initial access is permitted but the access of certain information is not permitted."]

[15] The CFAA is a criminal statute with a civil cause of action. *Lockheed, supra,* 2006 U.S. Dist. Lexis at 23-24. To the extent "without authorization" or "exceeds authorized access" can be considered ambiguous terms, the rule of lenity, a rule of statutory construction for criminal statutes, requires a restrained, narrow interpretation. *Id*, citing, *Pasquantino v. United States*, 544 U.S. 349, 383, 125 S. Ct. 1766, 161 L. Ed. 2d 619 (2005). … Thus, the view of the CFAA adopted by this Court is one that follows the statute's plain meaning, and coincidently, has the added benefit of comporting with the rule of lenity. *Id.*

intrusion in part on the level of authorization a computer user possesses, Congress distinguished between 'insiders, who are authorized to access a computer,' and 'outside hackers who break into a computer.'" *Id*. at 219 (quoting S.REP. NO. 104-357, at 11 (1996)). It then went on to discuss the Second Circuit's decision in *United States v. Morris*, 928 F.2d 504 (2nd Cir. 1991), which is credited with introducing the "intended function test" for determining whether access to a computer is unauthorized. This test focuses on whether the user accessed a computer in a way that is related to its intended function.

The Court then determined that the plaintiffs had not identified the theory that it was proceeding under, but noted that to the extent 'without authorization' or 'exceeds authorized access' can be considered ambiguous terms, the rule of lenity, a rule of statutory construction for criminal statutes, requires a restrained, narrow interpretation." *Id*, citing *Lockheed*, supra at * 7.

Like *Lockheed* and even assuming the allegations of Defendant are true, the Defendant here have failed to state a claim under the CFAA. Defendant admits all use of the website by the users were authorized and Defendant has avers that they operate a website whereby consumers can discuss anti-aging solutions and personal beauty services. Counter-Complaint at ¶ 7. In order to use the site, a person simply has to sign up as a user. Counter-Complaint, ¶ 12. Defendant avers that Plaintiffs' "agents" registered as users. Counter-Complaint, ¶ 21. Defendant does not aver that Plaintiffs' "agents" hacked into the system [16] and based upon their status as a user were able to post information on the site. However site contains no restrictions on *who* may sign up as a user and both registered and unregister users may view the site.  Nor has Defendant pled that the Plaintiffs obtained access to the website via a misrepresentation or asserted that the Plaintiffs' alleged agents, by posting *any* comment on the site, exceeded their authorized access as a registered user of the site. In fact, Defendant appears to concede that as registered users they

---

[16] In this case, one of the complaints is that users signed up to the web site using pseudonyms. Counter-Complaint,¶ 16. However, as noted in Exhibit A, and as this Court may view at http://www.realself.com/user/new, to sign up as a user, a user is required to create a "username" to protect their privacy nor are they required to provide any personal information about themselves, other than to provide a valid email address.

were authorized to make postings to the site. Rather, what Defendant complains about is the content of the specific postings users made which Defendant believes are false and fabricated. *See*, Counter-Complaint, ¶'s 16-19. While the Defendant alleges that the unknown users who posted to the site, violated the terms and conditions of the site, the *Secureinfo* Court made clear that not every breach of a software licensing agreement equates to a breach of the CFAA. Furthermore, like the defendants in *Lockheed*, the users of the Defendant's website were authorized to post to the site. However, the fact that they allegedly posted comments to the site in violation of the terms and conditions does not mean that they obtained access to the site without authorization or exceeded the authorization they were granted, such as by hacking into the private portions of the web site. Rather, like the defendants in *Lockheed*, the Plaintiffs' "agents" fall within the scope of persons the act does not reach – those who have access. Hence, Defendant fails to state a claim under 18 U.S.C 1030(A)(4) and therefore Defendant's Counter-Claim must be dismissed.

## IV.   CONCLUSION

For the reasons set forth herein, Plaintiffs/Counter-Defendants/Third Party Defendants respectfully request that this Honorable Court grant this Motion to Dismiss and dismiss Defendant's Counter-Claim.

Respectfully submitted,

Dated: March 21, 2008   s/ Allan S. Rubin
        ALLAN S. RUBIN (P44420)
        DRAPER, RUBIN & SHULMAN, PLC
        Attorneys for Plaintiffs
        29800 Telegraph Road
        Southfield, Michigan 48034
        (248) 358-9400
        allan@drsplc.com

## CERTIFICATE OF SERVICE

The undersigned does certify that on this 21st day of March 2008, he did file the forgoing documents using the CM/ECF system which will send notice of this filing to all counsel of record.

s/ Allan S. Rubin